BEARDEN MERCANTILE COMPANY *v.* MADISON OIL COMPANY. FITZPATRICK *v.* MADISON OIL CO.

1. When an executory contract for the sale of goods provides in one distinct paragraph for the sale of articles of a given character at a stated price to be delivered during a given period and in a stated manner, and in another distinct paragraph, beginning with the words: "We have also sold you," provides for the sale of articles of a separate and distinct character, to be delivered in a given manner, but with no time for delivery stated, the contract is divisible, containing two separate and distinct agreements for the sale of the different articles therein referred to. And this is true notwithstanding the contract concludes with a guaranty that as to the articles referred to in the second paragraph local prices shall not be less than a given amount "for the balance of the season," and an agreement to handle only cash trade, except carload lots out of town.

2. In a contract of a character above indicated, time would be of the essence so far as the article referred to in the first paragraph was concerned, but it would be otherwise as to the articles referred to in the second paragraph.

3. When a contract fixes no time for performance, it is to be construed as allowing a reasonable time for that purpose; and what is a reasonable time is a matter of fact to be determined by a jury under all of the circumstances of the case.

4. While parties to a contract may, by a course of dealing after a contract has gone into effect, waive a stipulation therein, still, in order to bring about this result, it must appear from the circumstances that it was the mutual intention of the parties to so change the contract.

5. The answer and the amendment thereto, in so far as each related to that part of the contract referring to the sale of the hulls, set forth no ground of defense; but those portions relating to the sale of meal set forth a cause of action.

Argued April 24,—Decided July 12, 1907.

Complaint. Before Judge Lewis. Morgan superior court. March 8, 1906.

The Madison Oil Company brought suit against the Bearden Mercantile Company on an account for $1627.96. The bill of particulars attached to the petition contained items of cottonseed hulls and meal, sold at different dates, from September 1, 1903, to March 8, 1904. The total amount of the account was $1,958.28, which was credited with $330.32, leaving a balance due as above stated. The defendant filed an answer in which it admitted that the goods set out in the petition were sold and delivered to the defendant as therein alleged; and that the plaintiff was entitled to recover, un-

less the defense set up by it was sustained. The answer then alleged that on October 15, 1903, the defendant jointly with H. H. Fitzpatrick entered into a written contract of which the following is a copy: "Messrs. Bearden Mercantile Co., Mr. H. H. Fitzpatrick, Madison, Ga.

"Gentlemen: Please note and confirm that we have this day sold you 400 tons of cottonseed hulls, f. o. b. our Madison mill, at the price of $4.50 per ton for loose hulls and $5.50 per ton for baled hulls. Same to be delivered to you either on cars or in wagons at our mill at your option, between now and January 1, 1904. We, if possible, will store for you not over 150 tons in our hull-house after this time, provided it is possible to do so, same to be delivered as desired after that time. In case this is necessary, the hulls are stored at buyer's risk. Settlement for hulls delivered to be made at the end of each month.

"We have also sold you 200 tons of cottonseed meal, at $21.00 per ton of 2,000 pounds, f. o. b. our mill, either delivered to wagons or loaded on cars; but should you desire to take part of this contract in second grade, or what is known as 'off meal,' and we have the same on hand as you call for it, this off meal to be billed to you at $20.00 per ton f. o. b. our mill, either on your wagons or on cars. Payment for all meal delivered to be made at the end of each month.

"We guarantee our local prices to be not less than $22.00 per ton f. o. b. our mill, for meal in small quantities, for the balance of this season; and further agree to handle only cash trade, except car-load lots out of town.

"Madison Oil Co.    D. H. Hicky, Secy. & Treas.

"Accepted.    Bearden Mercantile Co.    H. H. Fitzpatrick."

It was alleged, that the items in the account prior to October 15, 1903, and subsequently to February 3, 1904, were not delivered under the contract, but such items were covered by another transaction; that the goods in the items between the dates of October 15, 1903, and February 3, 1904, were delivered under and in pursuance of the contract above set out, the defendant having received, during these dates, 90 3/4 tons of hulls and 26 1/2 tons of meal; that the legal effect of the contract was to give the defendant a half interest in the goods therein referred to, but that it has not received of the plaintiff his half of the goods. It has, at all times,

been ready and willing, and has offered, to receive the goods that it was entitled to under the contract, and has been at all times ready and able to pay for the same as provided by the contract. On January 1, 1904, plaintiff did not have on hand sufficient hulls to deliver all that might have been demanded of it, but defendant waived prompt delivery and accepted later deliveries, and was willing to accept the same. On February 3, 1904, plaintiff, without lawful excuse, refused to deliver any more goods under the contract, and notified defendant that it would not do so. It then and there repudiated and terminated the contract. The defendant persisted in an effort to obtain satisfaction, but being unable to do so, on April 5, 1904, offered to pay petitioner the amount sued for in this case, less the damages that it had sustained on account of the breach of the contract by the plaintiff. A tender of $798.05 was made, which is the amount admitted to be due by the defendant after crediting the account with the amount of the damages above referred to. At the time of the breach of the contract the market price of hulls at the place of delivery was $10.50 for loose and $11.50 for baled hulls, and the market price of meal was $24.00 per ton. At the trial the defendant offered an amendment to its answer, in which it was alleged, that the defendant was at all times ready and willing to pay under the terms of the contract, and has never refused; that the plaintiff kept the books, and it was the custom of the plaintiff, in its business, to present statements for payment, but it presented to defendant no statements at the end of each month, or at any time during the deliveries, though defendant requested the same. Defendant was known to be amply solvent, and by tacit consent of both parties a prompt settlement and payment at the end of each month was waived, and the plaintiff did not object to making further deliveries after the end of each month because settlements had not been made by the defendant, but it waived payment at such times and continued to make deliveries under the contract. Plaintiff was a manufacturer of hulls and meals, and was manufacturing the same during the continuance of the contract, and up to February, 1904, and thereafter. On January 1, 1904, plaintiff had not the hulls contracted to be sold on hand, which was well known to both parties, but the plaintiff was expected to manufacture the same. Had it had the hulls to deliver, there was ample room, and it was entirely possible, to have

stored 150 tons of said hulls in plaintiff's warehouse, as stipulated in the contract. Defendant waived a strict delivery of all hulls due on January 1, and by mutual consent and tacit understanding the hulls were continued to be delivered from time to time thereafter upon the contract; both parties thus departing from the enforcement of the time stipulations. It was not the intention of either party to abandon the contract or waive a final performance. Were it otherwise, it was the duty of the plaintiff to have stored for the defendant in their warehouse at least 150 tons of hulls on January 1, 1904, to be delivered as desired after that time. This the plaintiff did not do, but, on February 3, 1904, notified defendant that it would make no more deliveries. Defendant then demanded a full performance, and offered to perform all obligations on its part, but plaintiff refused, to the damage of defendant. The court refused to allow this amendment, and struck the original answer on general demurrer; and judgment was entered against the defendant for the amount sued for. The defendant excepted. The facts in the case of *Fitzpatrick* v. *Madison Oil Co.*, except as to amounts, are practically the same as those embraced in the foregoing statement.

*Samuel H. Sibley* and *Williford & Middlebrooks*, for plaintiffs in error. *Foster & Foster*, contra.

Cobb, P. J. (After stating the facts.)

1. The contract involved in the present case is not a contract for the sale of goods. There were no particular articles identified by the contract, and it lacked this essential element of a sale. It is an executory agreement for the sale of goods to be delivered at a future date. As such it is valid and binding; and this is true notwithstanding the seller had not the goods in his possession, had not contracted to purchase them, and had no expectation of acquiring them other than by purchase or manufacture at some time before the date of delivery. *Forsyth Manufacturing Co.* v. *Castlen*, 112 *Ga.* 199. The contract did not provide for the sale of a single article, but for articles of a given class; and there were two separate and distinct classes of articles referred to therein. It is therefore to be determined whether the contract was entire or whether it was severable in its nature; that is, whether it contained one contract for the sale of hulls and meal, or whether the paper contained two contracts, one an agreement to sell hulls and

the other an agreement to sell meal. If the contract is entire, the whole must stand or fall together. If it is severable, the failure of a distinct part does not void the remainder. The character of the contract, as to whether it was severable or entire, is to be determined by the intention of the parties, as indicated by the terms of the agreement. Civil Code, §3643. And if the contract is upon one consideration, this fact is a strong, and, in some cases, a controlling circumstance in determining the character of the contract, and that it was the intention of the parties that it should be entire. This contract, however, is not based upon a single consideration. The amount to be paid was dependent upon the quantity of the articles that were ordered from time to time. The payments were to be made at specified times after delivery, that is, at the end of the month. The contract deals first with the subject of hulls, and stipulates the price, time, place, and manner of delivery, as well as other matters connected therewith. After having concluded with this matter the contract, in a distinct paragraph, approaches the subject of meal with the significant language, "We have also sold you," etc. This paragraph of the contract provides for the price, place, and manner of delivery, and also other matters in reference to this subject-matter. The parties in the paper have dealt with the two subject-matters separately, and there must have been some reason for this in the minds of the contracting parties. There was an intention to separate, and this intention the law will allow to prevail. The paper contains two separate and distinct contracts independent of each other. If time was of the essence as to that portion of the contract relating to hulls, and time was not of the essence as to that portion of the contract relating to meal, it would be possible for the defendants to have lost their right to demand the delivery of the hulls and still be in a position to demand the delivery of the meal. But if time was not of the essence as to either of the subject-matters of the contract, and the defendants had a reasonable time, without reference to the date stated, to call for a performance, it might be that, under the circumstances of the case, a reasonable time would elapse as to one of the articles before it would expire as to the other. But it is said that the last paragraph in the contract, in which the plaintiffs guarantee local prices for meal at a given figure "for the balance of this season," etc., indicates that it was the

intention of the parties to make the transaction in reference to both subject-matters concurrent as to time as well as in other particulars. It does not appear, from the terms of the contract, what was the season. Whether it expired on the first day of January following the execution of the contract, or at some other time, we can not tell. There is no averment in the pleadings which can be looked to to resolve this ambiguity in the contract. Whatever may have been the season for the sale of the articles, the contract provides that this guaranty shall be operative; but we do not think that this guaranty has the effect to change the character of the contract and render it entire when it would otherwise be divisible. When the contract is construed as a whole, we think it a reasonable interpretation that it was the intention of the parties that it should be divisible as to the two classes of articles referred to therein.

2. At common law time was always of the essence of the contract, but in equity it was otherwise unless it was the manifest intention of the parties to make time of the essence. This intention might be either expressed or implied. Clark on Contracts (2d ed.), 408; Hammon on Contracts, 881. Our code has adopted the more liberal rule of the equity courts, and declares, "Time is not generally of the essence of the contract; but by express stipulation or reasonable construction it may become so." Civil Code, § 3675, par. 8. Interpreting the contract, therefore, under this rule, we must not stop merely at finding the time for the performance specified, and hold the parties strictly to performance within that time, but must go farther and determine whether, under the terms of the contract, this time is expressly declared to be of the essence of the undertaking, or whether, if not so expressly declared, a reasonable construction of the provisions of the contract would necessarily lead to that conclusion. Applying this rule, we have little difficulty in reaching the conclusion that it was undoubtedly the intention of the parties that time should be of the essence of the contract in the present case, so far as it related to the sale of hulls. The contract says, "We have this day sold you," etc., describing the articles and the price, "same to be delivered to you" in a given way "between now and January 1st, 1904." No other interpretation can be properly placed upon this language than that it was the intention of the parties that at least a demand for the hulls should be made before the first day of January, 1904. A

strict construction might require that the demand should be made
in time for the delivery before that date; but certainly the contract
bears the interpretation that the demand should be made before
that date, even though it might be followed by a delivery thereaf-
ter.    The right to demand a delivery of the articles terminated,
so far as the hulls were concerned, on the first day of January, 1904.
In reference to the meal the time for the delivery does not appear
in the paragraph of the contract dealing with that subject.   This
may have been an oversight, or it may have been the result of de-
liberation.    Keeping in mind the rule above referred to, that in
order for time to be of the essence there must be an express stipu-
lation, or terms demanding a reasonable construction to that end,
we can not say, where a contract is entirely silent in reference to
a particular article which is dealt with in a distinct paragraph,
that a reasonable construction requires that time shall be of the
essence of the contract.    If we were to attempt to do so, what time
would we fix?    The parties have omitted to specify any time.
Must we look to an entirely distinct paragraph of the contract,
dealing with an entirely different subject of sale, and fix that as
the time?    We do not know judicially that hulls and meal are so
intimately connected with each other, so far as the purposes of
commerce and trade are concerned, that the time in the contract
for the sale of one would be appropriate in a contract for the sale
of the other.    Of course we know that cottonseed oil and cotton-
seed meal are the products of cottonseed, and are the products, or
manufactured from, the same thing, because this is a matter of
such common knowledge that every person knows it; but our judi-
cial knowledge in reference to the uses of trade in reference to the
two articles is not so broad, as it is as to the fact that both articles
are produced from the same thing and at the same time.    But
it is said, the last paragraph of the contract, in reference to guar-
anteeing the local price during a given season, might be looked to
to determine this.    As stated above, we do not know what is the
season for the sale of either of these articles.    There is nothing
in the contract to indicate that the season for the sale closed on
January 1, 1904, as to the meal; and in fact nothing to indicate
that the season closed at that time in reference to hulls.    And on
the question as to what is the season for the sale of these articles
we are in ignorance, both judicially and individually.    It may have

been the purpose of the contracting parties to make time of the essence as to the meal. But they have failed to provide any such express stipulation; and a reasonable construction of the contract does not call for such an interpretation.

3. When a contract fixes no time for performance, the contract is to be construed as allowing a reasonable time for that purpose. Clark on Contracts (2d ed.), 408; Hammon on Contracts, 381. Where a party to a contract undertakes to do a particular act, the performance of which depends entirely upon himself, and the contract is silent as to the time of performance, the law implies an engagement that it shall be executed within a reasonable time. 9 Cyc. 613. Of course it was not intended by the parties that this executory agreement should continue for all time. The parties had definitely agreed that the agreement should not be in existence after January 1, 1904, so far as the hulls were concerned. The plaintiff had agreed to sell to the defendants meal. Whether they were entitled to receive the hulls depended upon whether they demanded the delivery prior to January 1, 1904. Whether they should be entitled to demand the meal depended upon whether the delivery was called for within a reasonable time after the execution of the contract. The plaintiff was under no obligation to tender either the hulls or the meal. It was under obligation to deliver in the one instance in the time provided in the contract, and in the other in the time authorized by law. What was a reasonable time in which to call for a delivery of the meal under the contract is a question of fact to be determined by a jury under all of the circumstances of the case. The answer alleges that the defendants demanded full performance on February 3, 1905. Full performance would have meant the delivery of all of the articles that the defendants were entitled to demand under the contract and had not been delivered prior to that time. This was a sufficient allegation of a demand for delivery, and whether this demand was made within a reasonable time is to be determined as above indicated. This case is to be distinguished from the case of *Electric Railway Co.* v. *Tennessee Co.*, 98 *Ga.* 189, in that the contract there under consideration was an executory agreement for the sale of a given quantity of articles to be delivered daily for a period not specified. It was held that the contracting party who was to furnish the articles could not terminate the contract without notice, but that it

could be terminated by giving notice. In the present case the articles were not to be delivered daily, but they were to be delivered when called for; the time in which they were to be called for not being fixed by the parties, the law implies that it was the intention of the parties that a reasonable time should be allowed for this purpose. In addition to this, that case did not deal with the question as to when notice of discontinuance should be given. There is nothing in that case to indicate that even a contract of the character there involved can be discontinued by notice without allowing the parties a reasonable time to make other arrangements in reference to the subject-matter of the undertaking. The case rested upon the principle stated in Clark on Contracts, in this language: "If a continuous contract fixes no time during which it is to last, and no time is fixed by law or by usage, it may be determined at the will of either party by notice." Clark on Contracts (2d ed.), 430.

4. It is said, though, that it appears that the defendant did not comply with the contract in reference to payment at the end of each month, and therefore this was sufficient reason for the plaintiff to refuse to make further deliveries. Under the averments of the answer it is evident, so far as the time of payment was concerned, that the course of dealing between the parties had been such as to nullify this stipulation of the contract. The contract provided for statements to be rendered at given times, which were not rendered, although demanded, and payment was received at other times without objection. It is said, too, that the stipulation as to time in that portion of the contract providing for the sale of hulls has also been waived. There are in the pleadings averments that by mutual agreement and tacit consent, or similar words, certain things had been done. No express agreement changing the time is set up in the pleadings. The facts relied upon to show such agreement are set forth, and the words above referred to seem to be merely the conclusion of the pleader from the facts alleged, and the presiding judge, in an opinion which appears in the record, states that it was admitted in the argument before him that these words were to be given no more effect than mere conclusions from the facts pleaded. It appears that there were hulls delivered after the first day of January. This might constitute a waiver as to the demand being made before that date, so far as these hulls

were concerned. But would this waiver go any further than the particular transaction? While a distinct stipulation in a contract may be waived by the conduct of the parties, it must appear that it was the intention of the parties to treat such stipulations as no longer binding. The mere fact that one party so intended would not bring about this result. It must appear that it was the mutual intention; that is, the circumstances must be such as, in law, to make practically a new agreement as to the stipulations contained in the original contract. And construing the answer most strictly against the pleader, we can not say that the averments are sufficient to show that there was such a course of dealing as to show a mutual intention to do away with the stipulations in the original contract as to the time when the hulls were to be delivered.

5. It is contended by counsel for plaintiffs in error that under the contract the oil company was bound to store a certain quantity of hulls on the first day of January, 1904, for delivery thereafter. The contract was to deliver, when called for a given quantity of hulls. If all were not delivered prior to January 1, 1904, and the quantity undelivered was equal to or less than the quantity in the provision in reference to storing, then the plaintiff was, on application, to store for the benefit of the defendants; but we do not think that it was the intention of the parties that this quantity should be stored without reference to a request on the part of the defendants. A reasonable interpretation of the contract was that if the defendants, in their business, could not use the entire quantity before the first day of January, 1904, the plaintiff would keep stored not exceeding a certain quantity for delivery thereafter. But there was no positive duty imposed upon the plaintiff by the terms of the contract to hold or store this amount for the benefit of the defendants. There is no allegation that there was any request on the part of the defendants, prior to January 1, 1904, to store this quantity. The right of the defendants to demand delivery, as well as to demand storage, terminated on the date provided in the contract. The answer, and the amendment thereto, so far as each related to that portion of the contract providing for the sale of hulls, set forth no defense; but those portions of the answer and the amendment thereto relating to the contract for the sale of meal set forth a cause of action.

*Judgment reversed. All the Justices concur.*