## 71547. BROADCAST CORPORATION OF GEORGIA v. SUBSCRIPTION TELEVISION OF GREATER ATLANTA.

(338 SE2d 775)

BANKE, Chief Judge.

The appellee, Subscription Television of Greater Atlanta (STGA), and the appellant, Broadcast Corporation of Georgia (BCG), were parties to an agreement whereby STGA was to pay BCG to broadcast certain television programming, using a "scrambled" signal which could be enjoyed only by viewers using decoder boxes furnished by STGA. The transmissions were to be made via a UHF television station to be constructed by BCG at least partially for the specific purpose of complying with its obligations under the agreement. The arrangement broke down when the FCC severely restricted BCG's broadcast authorization due to the fact that its transmissions were interfering with those of other FCC licensees.

STGA brought the present action against BCG to recover for breach of contract, fraud, and other alleged wrongs, based on BCG's alleged failure to comply with its obligations under the agreement; and BCG counterclaimed to recover for STGA's alleged noncompliance with its obligations under the agreement. BCG later amended its counterclaim to seek recovery of an additional $2,500,000 under an alleged "liquidated damages" provision contained in the contract. Both sides moved for partial summary judgment on the issue of whether the contractual provision in question provided for liquidated damages or an unenforceable penalty. The trial court ruled in favor of STGA, on this issue, prompting BCG to file this appeal.

The contract between the parties was executed as part of an arrangement whereby BCG secured $2,500,000 in financing, structured as an equipment lease, to build the UHF TV station in question. Under the terms of the contract, STGA was entitled to make the payments for the transmission of its programming directly to the lessor under the BCG's equipment lease rather than to BCG itself. In the event the agreement was terminated for any reason, STGA agreed to pay all past-due and accrued "air-time" payments, plus an additional sum to be computed in accordance with a formula set forth in the contract. Under the circumstances as they actually developed, the amount of this additional sum came to $2,500,000. It is this portion of the contract which BCG characterizes as a "liquidated damages" provision. *Held*:

A contractual provision requiring payment of a stipulated sum by one of the parties upon termination or cancellation of the contract will be treated as an enforceable liquidated damages provision rather than an unenforceable penalty only if all three of the following factors are present: First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to

provide for damages rather than a penalty; and third, the stipulated sum must be a reasonable pre-estimate of the probable loss resulting from such a breach. See *Thorne v. Lee Timber Prods.*, 158 Ga. App. 226, 227 (279 SE2d 521) (1981), citing *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340) (1976). "Where a designated sum is inserted into a contract for the purpose of deterring one or both of the parties from breaching it, it is penalty." *Florence Wagon Works v. Salmon*, 8 Ga. App. 197 (2) (68 SE 866) (1910). Accord *Fortune Bridge Co. v. D.O.T.*, 242 Ga. 531, 532 (250 SE2d 401) (1978); *Thorne v. Lee Timber Prods.*, supra.

Asked at his deposition to describe the intent of the parties with respect to the contractual provision at issue in this case, BCG's chairman and major stockholder testified as follows: "The intent of the parties was that at any time that they terminated the agreement that the three (sic) million dollars of financing would be fully paid off and that we would have a station free and clear. That's what the intent of the parties was." (He further testified that the provision was intended to apply even if the contract were terminated because of BCG's nonperformance of its own obligations thereunder.) A more clear cut example of a penalty provision could scarcely be imagined. As noted by STGA in its brief, "[t]his is analogous to a landlord requiring one of his tenants to pay off his entire mortgage in order for the tenant to terminate his lease, regardless of whether the termination was justified, and regardless of whether the landlord is able to re-lease the premises to a new tenant."

Because the $2,500,000 sought by BCG as liquidated damages cannot be considered a reasonable pre-estimate of its probable loss resulting from the termination of the contract, and because it is clear beyond dispute from the testimony of BCG's chairman that not even BCG intended it as such, the trial court did not err in determining as a matter of law that it constituted an unenforceable penalty. Accord *Taylor v. Commercial Credit Equip. Corp.*, 170 Ga. App. 322 (316 SE2d 788) (1984); *Jones v. Clark*, 147 Ga. App. 657 (2) (249 SE2d 619) (1978). Compare *Gibson v. Sheriff*, 155 Ga. App. 578 (271 SE2d 710) (1980).

*Judgment affirmed. McMurray, P. J., and Benham, J., concur.*

DECIDED DECEMBER 5, 1985.

*Sidney O. Smith, Jr., R. Wayne Thorpe*, for appellant.
*J. Allen Maines, Caryn R. May, Philip S. Coe*, for appellee.