76578. THOMAS B. HARTLEY CONSTRUCTION COMPANY
v. LIBERTY LIFE INSURANCE COMPANY.
(371 SE2d 657)

BANKE, Presiding Judge.

The appellant corporation sued to recover a $37,000 earnest money payment it had made to the appellee contemporaneously with the execution of a real estate sale contract. The appellee had declined to return any portion of the payment (which represented approximately 10 percent of the $373,500 sale price specified in the contract) in reliance upon the following contractual provision: "In the event buyer elects not to close this contract on or before the specified closing date, then in such event the earnest money will be forfeited as full liquidated damages to seller." The trial court granted summary judgment to the appellee on the basis of this provision, rejecting the appellant's contention that such a forfeiture would constitute an unenforceable penalty. This appeal followed. *Held*:

1. "A contractual provision requiring payment of a stipulated sum by one of the parties upon termination or cancellation of the contract will be treated as an enforceable liquidated damages provision rather than an unenforceable penalty only if all three of the following factors are present: First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than a penalty; and third, the stipulated sum must be a reasonable pre-estimate of the probable loss resulting from such a breach." *Broadcast Corp. of Ga. v. Subscription &c. Atlanta*, 177 Ga. App. 199, 199-200 (338 SE2d 775) (1985).

"[W]hether a provision represents liquidated damages or a penalty does not depend upon the label the parties place on the payment but rather depends on the effect it was intended to have and whether it was reasonable. (Cit.) Where the parties do not undertake to estimate damages in advance of the breach . . . the amount, even though

called liquidated damages, is instead an unenforceable penalty. (Cit.)" *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 228 (227 SE2d 340) (1976). "'[I]n cases of doubt, the courts favor the construction which holds the stipulated sum to be a penalty, and limits the recovery to the amount of damage actually shown, rather than a liquidation of the damages.'" Id. at 231, citing *Mayor &c. of Brunswick v. Aetna Indem. Co.*, 4 Ga. App. 722, 728 (62 SE 475) (1908).

An examination of the record in this case reveals no basis for a conclusion that the $37,000 earnest money payment represented a reasonable pre-estimate by the parties of the probable loss the appellee might be expected to suffer in the event of the appellant's failure to close the transaction. The only evidence submitted by the appellee in this regard consisted of an affidavit, executed by the individual who had acted as its attorney-in-fact in signing the contract, averring that the sum in question represented an accurate pre-estimate of the appellee's probable loss for the following reasons: "First, the value of the land could have declined. Secondly, there are costs associated with ownership, such as interest and other administrative expenses. Thirdly, by taking the property off the market under a contract of sale, the potential loss of opportunity to sell the property to another buyer willing and able to purchase the property, would mean that it might take months or even years to find another buyer willing, ready and able to purchase the property. A 10 percent liquidated damage provision is not unusual in the real estate industry and is an accepted pre-estimate of damages."

These factors quite clearly provide no basis for an estimate of the *amount* of the loss the appellee might reasonably be expected to suffer in the event of a breach of the contract by the appellant. "The ordinary measure of damages [for the breach of a real estate sales contract] is the difference between the contract price and the market value of the property at the time of the buyer's breach." *Southeastern Land Fund v. Real Estate World*, supra, 237 Ga. at 229. The only evidence in this case going to the issue of the amount of the appellee's actual damages consisted of an affidavit submitted by the appellant averring that, within five months after the date the parties were to have closed the sale, the appellee had resold the property for $92,000 *more* than the $373,500 the appellant had agreed to pay for it. It follows that the record does not establish that the contractual provision in question constituted an enforceable liquidated damages provision, with the result that the trial court erred in granting the appellee's motion for summary judgment.

2. We do not reach the issue of whether the appellant's motion for summary judgment should have been granted, as it does not appear that the trial court entered any ruling on that motion.

3. We have carefully considered the appellant's remaining con-

tention — to the effect that there was a defect in the power-of-attorney pursuant to which the appellee obligated itself under the contract — and have determined that it is without merit.

*Judgment reversed. McMurray, P. J., Sognier, Pope, and Benham, JJ., concur. Birdsong, C. J., Deen, P. J., Carley and Beasley, JJ., dissent.*

BEASLEY, Judge, dissenting.

When a contract is breached, "[d]amages are given as compensation for the injury sustained. . . ." OCGA § 13-6-1. Parties to a contract, recognizing that a breach might occur because the contract relates at least in part to future events, may agree in advance what they will consider the damages to be, so as to avoid a lengthy and costly dispute about them should a breach occur and additionally to let each party know how much a breach will cost. So, since " ' "[c]ompetent parties are free to agree to whatever provisions in lawful contracts that they may choose . . . [i]f the parties agree what the damages for breach shall be, the damages are liquidated, and unless the agreement violates some principle of law, the parties are bound thereby. [OCGA §§ 13-6-1, 13-6-7]" ' [Cits.]" *Gibson v. Sheriff*, 155 Ga. App. 578 (271 SE2d 710) (1980). See also *Fortune &c. Co. v. Dept. of Transp.*, 242 Ga. 531, 533 (250 SE2d 401) (1978) for a similar articulation of the rule.

The contract involved here was for the sale of a number of lots in a residential subdivision by one commercial entity to another. The liquidated damages provision constituted the total amount which the seller could recover in case the buyer did not close within the sixty days specified. The agreed sum was $37,000, which was just short of 10% of the purchase price and constituted the earnest money so that nothing additional had to be paid or sought if breach occurred. The contract document also provided that it constituted the entire agreement between the parties.

This damages provision meets the tripartite inquiry set out by the Supreme Court in *Southeastern &c. v. Real Estate &c.*, 237 Ga. 227, 230 (227 SE2d 340) (1976), which also examined a real estate sales contract.

1) The injury which would be caused by failing to close would be "difficult or impossible of accurate estimation." As Chief Justice Hill points out in the dissent in *Quigley v. Jones*, 255 Ga. 33, 34 (334 SE2d 664) (1985), some of the anticipated damages from a breach of a real estate sales contract would be "(e.g., continued insurance coverage, utility bills, maintenance costs, ad valorem taxes, and loss of use of the proceeds of the sale)." While the property here was unimproved so that all of these expenses would not be incurred, taxes and the loss of use of proceeds would here be consequences of breach. The

latter would not be insignificant, for the purchase price was to be paid in cash, with the result that the seller would be losing the use of $373,500 from not later than December 20 until whenever it could sell the property at whatever price. It would take economists to put a dollar value on the use opportunity for this cash from December 20 to whenever a sale for at least that amount closed with another buyer. Moreover, regardless of when the property was sold, or for how much, the determination of legally awardable actual damages would be problematic, because in a real estate contract breach, "[t]he ordinary measure of damages is the difference between the contract price and the market value of the property at the time of the buyer's breach. [Cit.]" *Southeastern*, supra at 229; *Quigley*, supra at 33. Market value at the time of the breach would itself be subject to the varying opinions of experts who would have to reconstruct a past market, i.e., that of December 20, 1985, when making their evaluation.

2) It is patent that the parties "intend[ed] to provide for liquidated damages rather than for a penalty." They said so in plain English. Even though the label is not conclusive, the effect it was intended to have and its reasonableness satisfy this part of the test. See *Southeastern*, supra at 228. This was to be the sum total of the damages. It was not burdened with any pluses, as was the contract in *Southeastern*, which would give the non-breaching party legal damages in addition to the specified amount. In this regard, it is more akin to the provision enforced in *Fortune &c. Co.*, supra, although the one in this case is even purer because it does not have the perceived ambiguity which raised a dissent. The seller in the instant case did not retain any right whatsoever to seek any damages provided by law, but bound itself exclusively to what the parties agreed, a concrete maximum.

As noted by the court in *Southeastern*, "both parties are bound by their agreement" so that each takes the risk that the liquidated amount may be more than the actual loss which occurs in the future: "A non-breaching party who has agreed to accept liquidated damages cannot elect after a breach to take actual damages should they prove greater than the sum specified. The breaching party cannot complain that the actual damages are less than those specified as liquidated damages." *Southeastern*, supra at 230. Each side pays this price for the benefits of certainty. As the seller said by way of affidavit, "the value of the land could have declined." For that reason, the fact that the property was eventually sold for a higher price is irrelevant.

3) The sum here, slightly less than 10% of the total sales price, is "a reasonable pre-estimate of the probable loss." The factors mentioned above in discussing the first inquiry bear this out. They demonstrate that there are substantial actual losses and expenses arising from the delay in disposing of the property, marketing the

property again, and bearing the costs of its ownership in the interim. As the seller said by way of affidavit, "the value of the land could have declined . . . there are costs associated with ownership, such as interest and other administrative expenses . . . by taking the property off the market under a contract of sale, the potential loss of opportunity to sell the property to another buyer willing and able to purchase the property, would mean that it might take months or even years to find another buyer willing, ready and able to purchase the property . . . a ten percent liquidated damage provision is not unusual in the real estate industry and is an accepted pre-estimate of damages." None of this is refuted.

The majority puts the burden on the seller to show that the provision is not a penalty, but the law puts the burden on the defaulting party to show why it should not be bound by its agreement. "The defaulting party has the burden of proving the amount of the actual damages for the purpose of showing an absence of approximation between the actual loss and stipulated sum, and he has the burden of proving that the sum provided by the contract did not bear a reasonable relation to plaintiff's actual damages or that they were exorbitant and unconscionable." 25A CJS, Damages, § 144 (f). This principle is referred to in the separate opinion in *Krupp Realty Co. v. Joel*, 168 Ga. App. 480, 482 (309 SE2d 641) (1983), which concurred in part and dissented in part.

This is not a sum which must be said to have been " 'inserted into a contract for the purpose of deterring one or both of the parties from breaching it,' " which would make it a penalty. *Broadcast Corp. of Ga. v. Subscription &c.*, 177 Ga. App. 199, 200 (338 SE2d 775) (1985). It is not "manifestly unreasonable or oppressive," *Gibson*, supra at 579.

Consequently, the damages agreed upon by both parties, ironically in part so as to avoid a long and expensive lawsuit, should be enforced.

I am authorized to state that Chief Judge Birdsong, Presiding Judge Deen, and Judge Carley join in this dissent.

## ON MOTION FOR REHEARING.

On motion for rehearing, the appellee complains that we have erroneously transferred to it the burden of establishing the enforceability of the earnest money forfeiture provision, rather than requiring the appellant, as plaintiff, to establish its unenforceability. It was the appellee who moved for summary judgment on the issue; and, on motion for summary judgment the burden is, of course, on the movant to establish its entitlement to judgment as a matter of law. See generally OCGA § 9-11-56; *Ham v. Ham*, 230 Ga. 43, 45 (195 SE2d 429) (1973).

Moreover, a different result would not be compelled in this case even if the burden of proof were on the appellant, for our holding is based not merely on the appellee's failure to come forward with evidence from which it could be inferred that the earnest money payment reflected a reasonable pre-estimate of the amount of its expected loss in the event of a breach but also upon the appellant's affirmative showing that the appellee actually benefited from the breach.

The appellee additionally complains that we have overlooked OCGA § 13-1-13, which provides, in pertinent part, that "[p]ayments of claims made . . . where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered. . . ." This statutory provision has not previously been asserted by the appellee as a defense to the present action, either in the lower court or in this court. In moving for summary judgment, the appellee relied upon the enforceability of the earnest money provision; and consequently that is what the lower court ruled upon. Thus, the effect, if any, of OCGA § 13-1-13 on the transaction is not before us in this appeal.

DECIDED JUNE 22, 1988 —
REHEARING DENIED JULY 15, 1988 —

*W. Courtney LaFon, Beverly J. Hall,* for appellant.
*John A. Howard,* for appellee.