A89A0535. ATLANTA SIX FLAGS PARTNERSHIP v. HUGHES.
(381 SE2d 605)

McMURRAY, Presiding Judge.

Plaintiff, as seller, and defendant, as purchaser, entered into a real estate sales contract for the sale and purchase of 3.1358 acres of land in Cobb County, Georgia. In pertinent part, the contract provides the following: "SECTION 1. *PURCHASE AND SALE*. Seller hereby sells and agrees to convey and Purchaser hereby purchases and agrees to pay for that certain real property located in Cobb County, Georgia . . . SECTION 2. *PURCHASE PRICE AND PAYMENTS*. . . . The purchase price for the Property shall be . . . $650,000.00 . . . payable at the Closing . . . in cash, including the Earnest Money Deposits. SECTION 3. *EARNEST MONEY DEPOSIT*. 3.1 *Amount and Form of Deposit*. As consideration for Seller's executing this Agreement, Purchaser has concurrently herewith delivered to Chicago Title Insurance Company . . . cash in the amount of . . . $30,000.00 . . . which shall be considered as a portion of the purchase price. If the purchase and sale of the Property is not closed because of Seller's failure to timely perform its obligations or satisfy its conditions as set forth in this Agreement, the Earnest

Money Deposit shall be refunded to Purchaser on demand. In all other respects, the Earnest Money Deposit shall be nonrefundable and may be retained by Seller as liquidated damages, except as may otherwise be specified herein. SECTION 4. *CONDITIONS.* 4.1 *Feasibility Study.* Purchaser's obligations hereunder are conditioned upon Purchaser's completion and approval of a feasibility study with respect to Purchaser's intended use of the Property. . . . This condition shall be deemed satisfied unless Purchaser gives Seller written notice of termination of this Agreement within FORTY FIVE (45) CALENDAR DAYS from the date of mutual acceptance of this agreement (hereinafter referred to as the "Termination Notice"). If the Termination Notice is received by Seller within said period, this Agreement shall be considered null and void, the Earnest Money Deposit shall be returned to Purchaser except for One Thousand and No/100 ($1,000.00) Dollars which Seller shall retain as consideration for having taken the property off the market pursuant to this Agreement and, except as provided . . . neither party shall have any further rights or obligations hereunder. . . . 6.2 *Title Company and Closing Date.* The closing of this transaction (the "Closing") shall be held on May 15, 1987 at the office of the Title Company. . . . 9.3 *Entire Agreement.* Time is of the essence of the Agreement. This Agreement contains the entire understanding between the parties and supercedes any prior understandings and agreements between them respecting the subject matter hereof. There are no other representations, agreements, arrangements or understandings, oral or written, between and among the parties hereto or any of them, relating to the subject matter of this Agreement. No amendment of or settlement to this Agreement shall be valid or effective unless made in writing and executed by the parties hereto. . . . 9.4 *Mutual Acceptance.* The date of mutual acceptance of this offer is agreed to be the date the Agreement is received by the Title Company."

The agreement was received by the Title Company on February 18, 1987. The earnest money did not accompany it. Subsequently, on March 26, 1987, the Title Company received the earnest money from defendant. It also received a letter from defendant which reads, in part: "Just after you received the Escrow account instruction letter, we encountered several problems of which we were not aware . . . We have since been working with Mrs. Mary McArthur, of the [plaintiff], to solve these problems and we believe them to now be resolved. According to the Purchase and Sale Agreement, and our attorney, we believe the effective date of this contract to be the date the Earnest Money deposit of $30,000.00 is received by your company and acknowledged by your signature . . . Therefore, we believe this date needs to be March 26, 1987. If you are in agreement with our attorney's opinion, please deposit the Earnest Money into your Escrow ac-

count. If not, please let the [plaintiff], and myself, know immediately."

Because of the possible dispute between the parties concerning the effective date of the agreement, the Title Company placed the earnest money in its custodial account and awaited instructions. In the meantime, plaintiff responded as follows to defendant's position statement: "The escrow agent advises us that your deposit instructions infer that the timetable contemplated by the Agreement is to likewise commence with said deposit. This is not in compliance with the Agreement, which clearly provides that the Agreement and the time frames contained therein commence upon the date the Agreement is received by the title company (Section 9.4), in this case February 18, 1987. . . . We cannot agree to a unilateral amendment of the Agreement."

On April 3, 1987, defendant spoke with Mr. Carl Parker, a representative of plaintiff, via telephone. At that time, the problems which defendant encountered with respect to his use of the property were solved. Nevertheless, defendant asked Parker to extend the effective date of the contract to March 26, 1987, because of the problems he had encountered. Based on the conversation which followed, defendant "felt" that he and Parker had an "understanding" that defendant was not going to close unless the effective date of the contract was moved up. Defendant acknowledged, however, that Parker did not say he "will extend it." Rather, according to defendant, Parker said he would get back with defendant the next week. (Parker disagreed with defendant's version of the conversation. He interpreted defendant's request for an extension of the effective date as a "negotiating ploy" to gain additional time. And he averred that at the conclusion of the conversation he told defendant he should take another look at the situation if he was thinking about terminating the contract.)

A few days later, on April 6, 1987, defendant stopped payment on the escrow money check. However, defendant never sent a written termination notice in accordance with the terms of the agreement.

On April 7, 1987, plaintiff sent defendant a letter in which it informed defendant of its intent to close pursuant to the terms of the agreement. One day before the scheduled closing, defendant notified a representative of plaintiff that he did not intend to appear at the closing. In fact, he did not do so.

Thereafter, plaintiff brought this breach of contract action against defendant. It sought, inter alia, liquidated damages in the amount of $30,000 pursuant to the agreement. Defendant answered the complaint and denied liability. Thereafter, following discovery, plaintiff moved for partial summary judgment upon the liquidated damages claim. The superior court denied plaintiff's motion, ruling, sua sponte, that a question of fact exists as to whether the contract

was supported by consideration. In this regard, the superior court opined that defendant's failure to pay the earnest money deposit may have resulted in a "no-contract" situation.

We granted plaintiff's application for interlocutory review and this appeal followed. *Held*:

1. Plaintiff's promise to sell the property was supported by defendant's promise to buy it and the mutual promises and obligations of the parties constituted sufficient consideration for the contract. OCGA § 13-3-42; *Giant Peanut &c. Co. v. Long Mfg. Co.*, 129 Ga. App. 685, 687 (201 SE2d 26). Thus, defendant's failure to pay the earnest money did not result in a failure of consideration. See *Mangum v. Jones*, 205 Ga. 661, 666 (54 SE2d 603).

2. Pursuant to the contract, defendant's obligation to purchase the property was conditioned upon the completion and approval of a feasibility study. The condition was deemed satisfied, however, unless defendant gave plaintiff a written termination notice within 45 days of the date of mutual acceptance. The date of mutual acceptance was February 18, 1987. Thus, if defendant was to terminate the contract, it was incumbent upon him to give plaintiff written notice of termination by April 6, 1987. He failed to do so.

"It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties. [Defendant] in the case must stand upon the contract as made by the parties." *Carr v. Louisville &c. R. Co.*, 141 Ga. 219, 222 (80 SE 716). Having failed to give plaintiff written notice of termination, defendant was obligated to stand upon the contract as made and purchase the property. Defendant breached the contract by failing to make that purchase.

Defendant argues that, pursuant to his telephone conversation with Parker on April 3, 1987, the parties orally agreed to terminate the contract. This argument is flawed. Defendant only demonstrated a *unilateral* intention to vary the terms of the contract — he failed to demonstrate a *mutual* intention to do so. See *Bearden Mercantile Co. v. Madison Oil Co.*, 128 Ga. 695 (4), 703 (58 SE 200); *Ryder Truck Lines v. Scott*, 129 Ga. App. 871, 873 (4) (201 SE2d 672). Besides, an oral agreement to modify a written contract for the sale of land is unenforceable. *Sanders v. Vaughn*, 223 Ga. 274 (1) (2) (154 SE2d 616).

3. "A contractual provision requiring payment of a stipulated sum by one of the parties upon termination or cancellation of the contract will be treated as an enforceable liquidated damages provision rather than an unenforceable penalty only if all three of the following factors are present: First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than a penalty; and third, the stipulated sum must be a reasonable pre-estimate of the probable

loss resulting from such a breach." *Broadcast Corp. of Ga. v. Subscription Television &c.*, 177 Ga. App. 199, 200 (338 SE2d 775). This tripartite inquiry was enunciated by the Supreme Court in *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340).

Although no genuine issue of material fact exists as to whether defendant breached the contract, we cannot say that, as a matter of law, the liquidated damages provision of the contract can be enforced against him. "[T]he enforceability of a liquidated-damages provision in a contract is a question of law for the court. *Martin v. Lott*, 144 Ga. 660, 665 (87 SE 902) (1916). However, in deciding that question, the court must make the tripartite inquiry outlined in *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340) (1976), which necessarily requires the resolution of questions of fact." *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, 258 Ga. 808, 809 (375 SE2d 222).

In the case sub judice, plaintiff has made no affirmative showing with regard to the tripartite factual questions outlined above. Compare *Thomas B. Hartley Constr. Co. v. Liberty Life Ins. Co.*, 187 Ga. App. 849 (371 SE2d 657), reversed in *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, supra, in which an affidavit pertaining to the tripartite factual analysis was submitted in support of a motion for summary judgment. Accordingly, the denial of plaintiff's motion for partial summary judgment upon the liquidated damages claim was not error.

*Judgment affirmed. Carley, C. J., and Beasley, J., concur.*

DECIDED APRIL 27, 1989.

Swift, Currie, McGhee & Hiers, John P. MacNaughton, C. G. Jester, Jr., for appellant.

Mark W. Crouch, for appellee.

