## A97A2157. ASHKOUTI v. WIDENER et al.
(500 SE2d 337)

BIRDSONG, Presiding Judge.

Gerald J. Ashkouti appeals the grant of summary judgment to Patricia Marie Widener and Janet Widener Sims, individually and as Trustees of the Item VI Trust of the will of Marie Louise Brown Widener ("the Trustees"). Ashkouti claimed that, after agreeing to sell him certain property owned by the Trust, the Trustees breached their agreement with him by selling the property to another. The Trustees contend, however, that the agreement with Ashkouti had expired before they sold the property.

The record shows the Trustees initially agreed to sell Ashkouti approximately 66 acres of land for $3,000,000 with a closing date to be designated by Ashkouti that would be no later than 90 days after the end of a six-month inspection period. Under the original agreement, the effective date of the agreement was April 11, 1994, the inspection period would have ended October 11, 1994, and the closing would have been no later than January 9, 1995.

Subsequently, on August 1, 1994, however, the parties amended the agreement as follows: "Whereas the parties do agree to amend the contract for the rezoning of 38 acres (more or less) known as tract No. 2 . . . to residential multi-family (RM). The parties agreed that if the County zones the property RM-13 that the purchase price of three million dollars ($3,000,000) shall be the acquisition price. In the event the property is zoned RM-10 the purchase price of two million eight hundred thousand ($2,800,000) shall be the acquisition price. The remainder of the property as presently zoned is acceptable to Purchaser and shall not be submitted for any zoning change. The cost of zoning shall be at the expense of Purchaser and Sellers shall cooperate in necessary documents for the subject zoning."

Then, on August 2, 1994, the parties also agreed to amend paragraph 9 (a) of the original agreement regarding the inspection period: "The parties agree to extend the 'inspection period' stipulated per Paragraph 9 (a) to forty-five (45) days from the date of the official execution of the zoning to RM-10 or RM-13 as per the decision of the Gwinnett County Commissioners." Neither the original agreement nor the amendments addressed what might happen if rezoning was denied or if rezoning was to some other classification. The agreement

provided, however, that the parties might waive any unsatisfied conditions that had been imposed for their benefit and proceed with the closing.

The parties apparently were doing just that until the County refused to rezone the property. Then, when the closing did not take place within 45 days after the county's action, the Trustees elected to consider the agreement terminated, to return the earnest money to Ashkouti, and to sell the property to another purchaser for $3,200,000. Although Ashkouti wrote the Trustees, advising them they had anticipatorily breached the contract, stating that he had waived the zoning condition, and demanding that they rescind the termination, no response was received.

The real estate agent representing the Trustees testified at his deposition that he sent the letter withdrawing the sales agreement because he determined that 45 days had passed after the rezoning decision and no closing had taken place. After the rezoning decision, however, the parties continued to negotiate a possible amendment to the sales agreement, and as late as April 6, 1995, the Trustees sent Ashkouti a proposed amendment to the original agreement. This proposed amendment referred to the original sales agreement and the other amendments thereto and stated that the parties desired to further amend the agreement. The proposed amendment, among other items, sought to modify the purchase price and the terms of payment and to provide that the sale would close on or before June 1, 1995. The record also shows that the realtor representing the Trustees offered to sell the property to other potential purchasers in January 1995, and began negotiations with the party who finally bought the property sometime in the first week of April 1995, and that a final agreement on that sale was reached on April 14, 1995.

Ultimately, Ashkouti sued the Trustees for breach of the agreement and expenses of litigation under OCGA § 13-6-11, and after discovery, both parties moved for summary judgment.

The Trustees contended the contract terminated 45 days after the county refused to rezone the property, that the failure to rezone terminated the contract, and that the contract was unenforceable because no purchase price was set forth in the agreement. Ashkouti contended, however, that according to the terms of the contract there was a closing period of 90 days after the end of the inspection period, that the zoning condition was one for his benefit that could be waived, and that a price of $3,000,000 was specified in the purchase agreement.

Thereafter, the trial court denied Ashkouti's motion for summary judgment and granted the Trustee's motion. This appeal followed. *Held*:

1. Construction of a plain and definite contract is a question of

law for the court (OCGA § 13-2-1; *Crooks v. Crim*, 159 Ga. App. 745 (285 SE2d 84)) susceptible to disposition by summary judgment. *Atlanta Six Flags Partnership v. Hughes*, 191 Ga. App. 404, 407 (381 SE2d 605). The standards applicable to motions for summary judgment generally are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474).

2. "The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." OCGA § 13-2-3. Further, "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." OCGA § 13-2-2 (4).

Considering the terms of the purchase agreement in light of these principles, we find that the trial court erred by granting summary judgment to the Trustees. Although the parties in drafting amendment 3 apparently did not contemplate that rezoning might be denied, it is apparent from the conduct of both parties that they intended that the amendment provided for an inspection period of 45 days after the county's action on the zoning request. OCGA §§ 13-2-2 (4) and (6); 13-2-3. Therefore, we find that under paragraph 9 (a), as amended, the inspection period ran through April 14, 1995, and thus under paragraph 5 (a) of the agreement, which was not modified by the later amendments, Ashkouti had until 90 days after the end of the inspection period to close the purchase. Therefore, under the facts and the agreement in this case, as amended, Ashkouti had until July 12, 1995, to close on the property. Accordingly, the sales agreement had not terminated at the time the Trustees notified Ashkouti that the purchase agreement was terminated and returned the earnest money.

3. Further, we also agree with Ashkouti that a purchase price was specified in the agreement. Although the amendments to the agreement did specify different purchase prices depending upon the zoning change made by the county, Ashkouti points out that he, under the terms of the agreement, could waive the zoning condition because that condition was placed in the agreement for his benefit. *Brack v. Brownlee*, 246 Ga. 818 (273 SE2d 390). We find that position well taken. A party to a contract may waive contractual provisions which are to his benefit. *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 257 (381 SE2d 322). Even though both parties wished to amend the sales agreement regarding the rezoning, the amendment was for Ashkouti's benefit because it provided for a reduced purchase price in the event the rezoning was less favorable than requested. Under these conditions, Ashkouti was authorized to waive the amendment

concerning the rezoning. Once that amendment was waived, the purchase price of $3,000,000 as specified in the original agreement remained as the acquisition price for the property. Accordingly, the Trustees' contention regarding the failure of the agreement to contain a purchase price is without merit.

Accordingly, the grant of summary judgment must be reversed.

4. As Ashkouti did not enumerate as error the denial of his motion for summary judgment, that issue is not before us. Accordingly, the case must be remanded to the trial court for further proceedings in accordance with this decision.

*Judgment reversed. Ruffin and Eldridge, JJ., concur.*

DECIDED FEBRUARY 23, 1998 —
RECONSIDERATION DENIED MARCH 25, 1998

*Schreeder, Wheeler & Flint, John A. Christy, Debbie A. Wilson,* for appellant.

*Pursley, Howell, Lowery & Meeks, Charles N. Pursley, Jr.,* for appellees.

