A93A1600. BRIDGES v. CITY OF MOULTRIE.
(437 SE2d 368)

BEASLEY, Presiding Judge.

The City of Moultrie was granted partial summary judgment and a writ of possession against defendants Truett and Bridges.[1] The order is not subject to OCGA § 5-6-35 (a) (3). In May 1977, Truett purchased from CSX Transportation (formerly Seaboard Coast Railroad Company) a station depot building in Moultrie to use as a warehouse. The bill of sale provided that the building was to be considered severed from the real estate as personal property and that the "instrument conveys no rights, title or interest in the real estate of Seller, nor right to leave or maintain said building on the real estate where

---

[1] Judgment was entered against both defendants, but only Bridges appeals.

situate." It further provided: "This bill of sale is delivered contemporaneously with a certain Lease between the parties named herein and all subsequent rights and obligations of the Purchaser are to be governed by said Lease, which Lease is incorporated herein. . . ." The lease, effective June 1, 1977, was for a 0.14 acre parcel of land on which the building was situated. It was terminable by either party upon 30 days' written notice, at which time the lessee was required to vacate and remove all structures not owned by the lessor. It was amended in February 1991 to reflect an increase in rent. All other terms were to remain in force.

On November 8, the city acquired the parcel by quitclaim deed from CSX, plus an assignment of the lease. On January 2, 1992, the city notified Truett by certified letter of its termination of the lease, effective 30 days thereafter.

According to the verified petition for writ of possession and admitted in the answer, Bridges occupies the building on the leased premises, in which he operates a recycling business. After notice of termination, defendants were granted an additional 30 days to remove their property, but refused to do so or to surrender possession of the premises.

In support of summary judgment, the city produced certified copies of a series of deeds beginning in 1899 to establish its ownership of the property through an unbroken fee simple chain of title. In response, defendants claimed that the original deed of 1899 is in error and the city failed to prove that it acquired fee simple title to the parcel.

Bridges asserts that a factual issue exists as to the existence of a landlord-tenant relationship. His argument is two-fold. First, as he asserted in answer to the petition, a condition to the 1977 purchase/lease agreement between Truett and CSX's predecessor-in-title conveyed to Truett a right of first refusal to purchase the parcel in the event it or its successors ceased to operate a railroad on the adjoining tracks. Second, as he claimed in response to interrogatories, CSX abandoned the property and had nothing to convey to plaintiff.

1. Although the defense of lack of landlord-tenant relationship is a proper defense to a dispossessory action, *Thomas v. Wells Fargo Credit Corp.*, 200 Ga. App. 592, 594 (3) (409 SE2d 71) (1991), "[c]laimed defects in the landlord's title to premises cannot be raised as a defense to a proceeding for possession under [OCGA § 44-7-50 et seq.]." *McKinney v. South Boston Savings Bank*, 156 Ga. App. 114 (2) (274 SE2d 34) (1980).

In a joint answer to the petition, Truett admitted that he leased the property from CSX in 1977, and Bridges admitted that CSX attempted to transfer the property to the city. Bridges now asserts that the assignment was not made in accordance with law and disputes

CSX's title and its authority to convey anything to plaintiff city. His challenge to the existence of a landlord-tenant relationship is predicated on an attack of the validity of CSX's original title to the land, but the law precludes him from disputing his landlord's title "while he is in actual physical occupation, while he is performing any active or passive act or taking any position whereby he expressly or impliedly recognizes his landlord's title, or while he is taking any position that is inconsistent with the position that the landlord's title is defective." OCGA § 44-7-9. "[A] landlord is authorized to file a complaint for the ejectment of his tenant alleging, not that the landlord has a presently enforceable *legal title to the land*, but, that the landlord has a presently enforceable *lease contract with the tenant*, and, that the tenant has breached said contract so as to entitle the landlord to possession." *Ingold, Inc. v. Adair*, 247 Ga. 155, 156 (274 SE2d 560) (1981). Since Bridges may not do indirectly what the law prohibits him from doing directly, he cannot defend the dispossessory action by challenging plaintiff's title.

2. Nor does Bridges' claim of abandonment avoid summary judgment. This assertion is predicated on evidence of a November 7, 1989 decision by the Interstate Commerce Commission approving CSX's request to abandon a portion of the railroad line. Bridges relies on *Fambro v. Davis*, 256 Ga. 326, 327 (1) (348 SE2d 882) (1986), for the proposition that "[w]henever a railroad line is abandoned, the presumption is that the fee is in the adjacent landowners and that their right extends to the centerline, unless the contrary appears." His claim is that when CSX abandoned the line it no longer had anything to convey to the city. An abandonment of the rail line merely, again, presents a challenge to the landlord's title, which is not a proper defense to the dispossessory action. Moreover, the railroad line is not the subject property. The lease covers the parcel of land, *adjacent* to the line on which the former depot is situated.

No evidence has been offered to defeat plaintiff's claim for summary judgment with respect to the issuance of a writ of possession.

*Judgment affirmed. Cooper and Smith, JJ., concur.*

DECIDED OCTOBER 28, 1993.

*Richard T. Kent, Gardner & Weathers, Sam J. Gardner, Jr., Joseph D. Weathers*, for appellant.

*Whelchel, Whelchel & Carlton, Hoyt H. Whelchel, Jr., James C. Whelchel*, for appellee.