## A99A1248. THORNTON et al. v. KUMAR et al.

(525 SE2d 735)

MILLER, Judge.

Bob and Patricia Thornton sued Surender Kumar and Barry Gibbs to recover earnest money paid to Kumar and Gibbs as sellers in a real estate contract with the Thorntons. Kumar and Gibbs refused to return the earnest money, maintaining that the Thorntons failed to provide notice of termination as required by the contract. When all parties (except Gibbs) moved for summary judgment, the trial court granted Kumar's motion and denied the Thorntons', which ruling the Thorntons appeal. Because the Thorntons terminated the agreement without proper notice and breached the contract, we affirm.

Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[1] Applying the de novo standard of review to an appeal from a grant of summary judgment, we must view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmoving party.[2]

Viewed in this light, the record shows that the Thorntons executed a real estate contract with Kumar and Gibbs. The Thorntons delivered earnest money to Kumar and Gibbs as provided by the contract. The contract provided for closing to occur on or before June 30, 1997, unless the date was extended in writing by the parties. The parties failed to close by that date because a bank held a lien against Gibbs that attached to the property. The parties agreed to extend the closing date to August 14, 1997.

On August 5, 1997, the Thorntons mailed a certified letter to Gibbs and his real estate agent, Denson, terminating the contract. Addressing Gibbs and Denson, the letter demanded that they return the earnest money "due to your inability to deliver good and market-

---

[1] OCGA § 9-11-56 (c).

[2] Matjoulis v. Integon Gen. Ins. Corp., 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

able title to said real property because of the writ of fieri facias filed
. . . against you."

The first issue is whether the terms of the contract allowed the
Thorntons to terminate the agreement before the closing date. The
construction of contracts involves three steps. First, if no ambiguity
appears, the trial court enforces the contract according to its terms,
irrespective of all technical or arbitrary rules of construction.[3] That
is, where the terms of a written contract are clear and unambiguous,
the court will look to the contract alone to find the intention of the
parties. Secondly, if the contract is ambiguous in some respect, the
court must apply the rules of contract construction to resolve the
ambiguity.[4] Finally, if the ambiguity remains after applying the rules
of construction, the issue of what the ambiguous language means
and what the parties intended must be resolved by a jury.[5]

The cardinal rule of contract construction is to ascertain the
intention of the parties.[6] Here the relevant section of the contract
provides:

> 6. Examination of Title and Defects in Title. Purchaser shall
> have until the closing date in which to examine Seller's title
> to the Property. In the event that Purchaser concludes in its
> sole discretion that Seller's title is such that Seller will be
> unable to or will elect not to cure the defects therein in
> accordance with the Agreement, Purchaser may so notify
> Seller, and this Agreement shall thereby be terminated and
> of no further force or effect, whereupon the Earnest Money
> will [be] returned to Purchaser and neither party will have
> any further rights, remedies or obligations hereunder. Fail-
> ure to so notify Purchaser [sic] of termination of this Agree-
> ment shall be deemed a waiver of such right of termination.

The Thorntons argue that this section of the contract grants
them an unfettered discretionary right to terminate the contract
before the closing date based on their assessment of Kumar and
Gibbs' ability to deliver clear title. Kumar and Gibbs counter that at
most the Thorntons could only reach a reasoned assessment at clos-
ing.

The law favors a construction that will uphold the contract as a
whole, and the whole contract should be looked to in arriving at the

---

[3] *Richard Haney Ford, Inc. v. Ford Dealer Computer Svcs.*, 218 Ga. App. 315, 316 (1) (b)
(461 SE2d 282) (1995).

[4] *Century 21 Pinetree Properties v. Cason*, 220 Ga. App. 355, 358 (2) (d) (469 SE2d 458)
(1996).

[5] Id.

[6] OCGA § 13-2-3.

construction of any part.[7] Here, we hold that section 6 of the contract is ambiguous and open to more than one interpretation regarding the Thorntons' right to terminate the contract prior to the closing date. The contract when read as a whole, however, specifically addresses in section 10 the purchaser's right to terminate at the time of closing.[8] Reading these sections together, we hold that the right to terminate addressed in section 6 of the contract refers to a time prior to the closing date. Pursuant to this section, the Thorntons could terminate the contract prior to the closing date under specified circumstances.

Pretermitting a discussion of what those circumstances would be, we focus on whether the contract required that the Thorntons provide Gibbs and Kumar a specific form of notice of termination. Again, section 6 of the contract is ambiguous as to the requirements of notice for termination of the contract, stating that "Purchaser may so notify Seller. . . ." The last sentence of section 6, however, requires notice of termination and states that failure to provide notice "shall be deemed a waiver of the right of termination." Section 22 of the contract sets out the requirements for notice:

Notices. All notices required or permitted by the terms hereof shall be given by hand delivery or sender-paid Federal Express overnight delivery, at the following addresses or at such other address as either party hereto shall in writing advise the other:
A: To Seller:
Gibbs and Kumar
P.O. Box 2035
Douglasville, GA 30133.

Therefore, read as a whole, the contract requires that the purchasers provide a specified notice of termination to the sellers pursuant to the requirements of section 22 of the agreement.

The Thorntons sent their notice of termination, by certified mail, to Gibbs and Denson (the real estate agent) at 6770 Fairways Drive, Douglasville, Georgia 30134. They did not send Kumar notice of the termination, and they sent Gibbs' notice to the wrong address. No

---

[7] OCGA § 13-2-2 (4); *Asian Square Partners, L.P. v. Cuong Quynh Ly*, 238 Ga. App. 165, 167 (1) (518 SE2d 166) (1999).

[8] 10. Termination. In addition to all other rights of Purchaser under this agreement and as provided by law (and not in lieu of any such rights), Purchaser, at Purchaser's sole election and in Purchaser's sole discretion, may cancel and terminate this Agreement by written notice to Seller, whereupon Seller shall return to Purchaser the Earnest Money, if any one or more of the following conditions or states of fact shall exist at the time of Closing. . . .

evidence reflects that the parties agreed, in writing, for the use of another address or to allow Denson to receive notice for Kumar and Gibbs.[9]

"It is the duty of [the] courts to construe and enforce contracts as made, and not to make them for the parties."[10] The Thorntons, who are seeking to strictly enforce the contract, must stand on the contract as made by the parties, and they failed to provide proper notice to Kumar and Gibbs as required by the specific terms of the contract.[11]

Section 13 of the contract states that "[i]n the event that Purchaser refuses to accept title to the Property as required by this Agreement or otherwise defaults in Purchaser's obligations hereunder the Earnest Money shall be retained by the Seller. . . ." As promised, Kumar and Gibbs provided marketable title by August 14, 1997, but the Thorntons did not schedule a closing date and refused to accept title to the property. The evidence showed that the Thorntons improperly terminated the agreement by failing to provide Kumar and Gibbs notice of the termination as required by the contract. The Thorntons also refused to consummate the sale of the property as required by the contract. Because the Thorntons refused to accept title to the property, Kumar and Gibbs could retain the earnest money.[12]

The trial court did not err in granting summary judgment to Kumar and Gibbs or in denying the Thorntons' motion for summary judgment.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 18, 1999.

*Stevens & Associates, Ronald S. Stevens, Gil C. Varon*, for appellants.

*Tisinger, Tisinger, Vance & Greer, Charles D. Mecklin, Jr.*, for appellees.

---

[9] Cf. *Gosule v. Bestco, Inc.*, 227 Ga. App. 863, 864 (1) (490 SE2d 532) (1997), holding that where there are no manifestations of authority by the principal to a third party, apparent authority is not an issue.

[10] (Citation and punctuation omitted.) *Atlanta Six Flags Partnership v. Hughes*, 191 Ga. App. 404, 407 (2) (381 SE2d 605) (1989).

[11] Id.

[12] See *McGuire v. Norris*, 180 Ga. App. 383, 384 (1) (349 SE2d 261) (1986). The Thorntons do not challenge the amount as a penalty.