A02A0581. TACHDJIAN et al. v. PHILLIPS.
(568 SE2d 64)

MILLER, Judge.

The dispositive issue in this appeal is a matter of contract interpretation. The signatories to a purchase agreement dispute whether the terms expressed in a particular paragraph of their contract constituted solely a right of first refusal, or in addition, created an enforceable option to purchase certain specified realty. Finding the language at issue established only a "right of first refusal" and not an option to purchase, the trial court entered summary judgment in favor of C. J. Phillips, the property seller. We find the contractual language at issue ambiguous and remand for further proceedings.

After several months of negotiations, Phillips entered into a "Purchase Agreement for Shares of Stock and Real Property" with

two buyers, Charles M. Tachdjian and Darryl M. Connors. Tachdjian and Connors agreed to a purchase price of $1,085,000 for American Vans, Inc., a van conversion business. The agreement included an 8.66-acre parcel of land with all improvements thereon as well as Phillips's company stock and certain business inventory, equipment, and assets.

Paragraph 18 of the purchase agreement entitled "RIGHT OF FIRST REFUSAL" forms the centerpiece of the underlying controversy. In its entirety, Paragraph 18 provides as follows:

> C. J. [Phillips] grants to the buyers a right of first refusal for a period of two (2) years after the closing date on either of the following tracts of land with the improvements located thereon: (a) the home place of C. J. and Betty Phillips including their cabin and all land located adjacent to the 8.66 acres described in paragraph 1 above. For a period of ninety days from the date of closing, the price of the home place including their cabin and all land located adjacent to the 8.66 acres described in paragraph 1 shall be four hundred twenty-five thousand ($425,000) dollars, payable One Hundred Thousand Dollars ($100,000) down, and the balance amortized over 10 years, payable in equal monthly payments, plus interest at the rate of Seven Percent (7%) per annum. Thereafter the price of the property shall be negotiated between the parties; (b) five (5) acres of land, more or less, located below the company's present complex adjoining the complex on East Jones Chapel Road. The price of the land shall be three thousand, five hundred ($3,500) dollars per acre.

The closing occurred on November 30, 1998, and Tachdjian and Connors purchased the stock and assets of American Vans including the 8.66 acres that contained the manufacturing compound. On February 10, 1999, within 90 days of the closing date, Tachdjian and Connors through counsel notified Phillips of their intent to "exercise their option" under Paragraph 18 (a) of the purchase agreement. By certified letter counsel for Tachdjian and Connors notified Phillips of their intent to exercise the option to purchase Phillips's home, cabin, and land adjacent to the 8.66 acres previously purchased. Phillips refused to convey the property described in subsection (a) of Paragraph 18 of.the purchase agreement. Instead, about five days after the notice letter, on February 15, 1999, Phillips filed suit against Tachdjian and Connors, alleging certain contract breaches. Tachdjian and Connors answered and counterclaimed. As required by the contract, the disputed issues were submitted to nonbinding mediation.

After mediation, the only issue remaining was the enforceability of Paragraph 18 of the purchase agreement, which formed the basis of Count 4 of Tachdjian and Connors's counterclaim. Count 4 sought specific performance of Paragraph 18 (a) on the exercise of the option for sale of the home place. As to that count, Tachdjian and Connors filed for summary judgment, and Phillips sought judgment on the pleadings. Tachdjian and Connors submitted their own affidavits. Tachdjian testified that Phillips's offer to sell the house, cabin, and lake acreage was "to sweeten the deal." According to Tachdjian, the parties' negotiations for the business included negotiations for the home place property. Attached to his affidavit were copies of facsimiles and correspondence exchanged with Phillips. Tachdjian testified that the 90-day option to purchase the home place "was an important part of the consideration given to me and Darryl Connors in order to induce us to purchase the [business and assets] for the price we paid." Connors testified to the same. According to Connors, during negotiations Phillips agreed to the 90-day option to buy the property for $425,000 and reiterated the same during the closing.

By affidavit, Phillips disputed that he had agreed to a 90-day purchase option. Phillips testified that "[b]y the time Mr. Tachdjian, Mr. Connors and I signed the Purchase Agreement on November 2 and 13, 1998, as part of the negotiations, I had dropped the sale price of my business and my wife, Betty Phillips, had decided she did not want to sell our house." Phillips testified, "[s]o in the Purchase Agreement I only gave Mr. Tachdjian and Mr. Connors the right of first refusal to buy my house."

The trial court denied Tachdjian and Connors's motion for summary judgment and awarded summary judgment to Phillips. The trial court decided as a matter of law that "Paragraph 18 of the agreement between the parties established a 'right of first refusal' and not an option to purchase." Noting that all other issues had been settled through mediation, and finding that no material issues of fact remained for jury resolution, the trial court entered summary judgment in favor of Phillips. This appeal followed.

Tachdjian and Connors contend that the trial court erred in ruling as a matter of law that the language in Paragraph 18 did not constitute an option to purchase real estate. They further assert that the trial court erred in granting summary judgment to Phillips by ruling as a matter of law that the language in Paragraph 18 was a right of first refusal.

On appeal, this Court reviews questions of law de novo. *Sagon Motorhomes v. Southtrust Bank &c.*, 225 Ga. App. 348, 349 (484 SE2d 21) (1997). The trial court must decide if the contract language is ambiguous; if it is, the trial court must apply the applicable rules of construction. *Gram Corp. v. Wilkinson*, 210 Ga. App. 680 (1) (437

SE2d 341) (1993). OCGA § 13-2-2 sets forth the rules for interpreting contracts generally. "The existence or non-existence of an ambiguity is itself a question of law for the court." *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 256 (2) (381 SE2d 322) (1989). A word or phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one. Id. "In extreme cases of ambiguity, where the instrument as it stands is without meaning, words may be supplied." OCGA § 13-2-2 (6). If after applying the statutory rules for construing a contract, we determine that an ambiguity still remains, we remand the matter to allow a jury to resolve the ambiguity. *Nobel Lodging v. Holiday Hospitality Franchising*, 249 Ga. App. 497, 498 (1) (548 SE2d 481) (2001). With these rules in mind, we examine the contractual provisions in dispute.

By definition, a "right of first refusal" means "[the] [r]ight to meet terms of [a] proposed contract before it is executed; e.g. right to have [the] first opportunity to purchase real estate when such becomes available, or [the] right to meet any other offer." Black's Law Dictionary (6th ed. 1990). An option, however, is defined as "a contract by which the owner of property agrees with another that the latter shall have the right to buy the owner's property at a fixed price, within a certain time, and on agreed terms and conditions." (Citations omitted.) *Mattox v. West*, 194 Ga. 310, 314 (1) (21 SE2d 428) (1942). An option requires: (1) an agreement conferring a right to buy, (2) certain described property, (3) within a fixed period of time, and (4) at a stated price. *Brown v. Mathis*, 201 Ga. 740, 745 (41 SE2d 137) (1947).

Even assuming without deciding that the first sentence in Paragraph 18 as well as subparagraph (b) grants a right of first refusal for two years, the meaning of the balance of the paragraph remains for interpretation. Subparagraph (a) provides as follows: "[f]or a period of ninety days from the date of closing, the price of the home place including the cabin and all land located adjacent to the 8.66 acres . . . *shall be* four hundred twenty-five thousand ($425,000) dollars, payable . . . $100,000 down, and the balance amortized over 10 years . . . at . . . Seven Percent (7%) per annum." (Punctuation omitted; emphasis supplied.) Subparagraph (a) continues: "[t]hereafter the price of the property *shall be negotiated between the parties.*" (Emphasis supplied.)

Subparagraph (a) of Paragraph 18 appears to contain all of the elements of an option: (1) an agreement by the owner, Phillips, giving a right to the buyers, Tachdjian and Connors, (2) to the property described as the home place, i.e., the property immediately adjacent to the 8.66 acres of the business property, (3) within the fixed time of 90 days of November 30, 1998, and (4) at the agreed terms of a price of $425,000, a $100,000 down payment, with the balance amortized

over ten years at seven percent. See *Brown,* supra, 201 Ga. at 745. Nevertheless, Paragraph 18 does not state that Phillips grants Tachdjian and Connors an unqualified *right to buy* or *confers upon them the right to purchase* the described property on the terms and conditions provided. Rather, it states that "C. J. [Phillips] grants the buyers a right of first refusal," which implies that they have the right to buy the property only if it is offered for sale to others. While the missing unqualified option language may be inferred, the absence of such language leaves the meaning ambiguous, particularly since the paragraph does not state how any such option would be exercised.

Notwithstanding Phillips's claim to the contrary, the peculiar phrasing at issue also lacks the language ordinarily used to create a "right of first refusal," because it makes no mention of an offer by a third party, the property owner's decision to sell, or any triggering event. See *Hamil v. Stanford,* 264 Ga. 801 (1) (449 SE2d 118) (1994) (right of first refusal if and when the home was put up for sale); *Hewatt v. Leppert,* 259 Ga. 112-113 (376 SE2d 883) (1989) (right of first refusal to match the conditions of a third party's "acceptable offer"); *Hornsby v. Holt,* 257 Ga. 341, 343 (2) (359 SE2d 646) (1987) (right of first refusal only if owner of property elected to sell the land).

"In Georgia, the law makes clear that if a right of first refusal is to be complete, the parties must supply the triggering term by agreement that informs the parties when such right is operative." *Booker v. Hall,* 248 Ga. App. 639, 642 (1) (a) (548 SE2d 391) (2001). Here, although the subparagraph specifies when this so-called "right of first refusal" will expire, it fails to specify how such right would be triggered. Compare *Bridges v. City of Moultrie,* 210 Ga. App. 697, 698 (437 SE2d 368) (1993) (right of first refusal to purchase parcel in the event railroad or its successors ceased to operate a railroad on the adjoining tracks); see *Oglethorpe Power Corp. v. Hartwell Energy Ltd. Partnership,* 244 Ga. App. 859, 860 (537 SE2d 372) (2000) (right of first refusal in the event that the partnership or one of its affiliates desired to sell a "transfer interest"). But, while subparagraph (a) specifies the price, describes the property, requires a down payment of $100,000, and provides the terms for financing the purchase, if Phillips had no intention whatsoever of selling the property, as he testified, such specificity may be nonsensical, unless perhaps such was to be the purchase price if he decided to offer the property for sale during the 90-day period.

"The law favors a construction that will uphold the contract as a whole, and the whole contract should be looked to in arriving at the construction of any part." (Footnote omitted.) *Thornton v. Kumar,* 240 Ga. App. 897, 898-899 (525 SE2d 735) (1999). It is axiomatic that "[w]e should avoid any construction that renders portions of the contract language meaningless." (Footnote omitted.) *Deep Six v. Aberna-*

*thy*, 246 Ga. App. 71, 74 (2) (538 SE2d 886) (2000). Here, the language at issue in Paragraph 18 is ambiguous and open to more than one interpretation regarding Tachdjian and Connors's rights to purchase the home place property. See *Thornton*, supra, 240 Ga. App. at 898-899. Although Phillips testified that he did not understand Paragraph 18 (a) to mean that he had granted an enforceable 90-day purchase option to the buyers, Tachdjian and Connors testified that they had the contrary understanding. While parol evidence is admissible to explain ambiguities, the question as to what was intended here is an issue of fact for the jury to resolve. *Sharple v. AirTouch Cellular &c.*, 250 Ga. App. 216, 218 (551 SE2d 87) (2001). Upon remand, in the event the jury should determine that Tachdjian and Connors obtained a 90-day option, then the trial court must enforce such option according to the terms of the agreement. *Hasty v. Health Svc. Centers*, 258 Ga. 625, 626 (373 SE2d 356) (1988) (holder of option can compel unwilling party to sell property). If the jury finds that the parties intended a right of first refusal (to be triggered by Phillips offering the property for sale), then Phillips must prevail.

*Judgment reversed and case remanded with direction. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 12, 2002 —
RECONSIDERATION DENIED JUNE 27, 2002

*Graham & Associates, Victor Y. Johnson, Alan M. Alexander, Jr.*, for appellants.
*Barry L. Fitzpatrick*, for appellee.