A02A2158. CINCINNATI INSURANCE COMPANY v. SHERMAN & HEMSTREET, INC.

(581 SE2d 613)

PHIPPS, Judge.

Sherman & Hemstreet, Inc. (Sherman) sued its insurer, Cincinnati Insurance Company (Cincinnati), because the insurer would pay only a portion of its claim. Based upon a joint statement of undisputed material facts, the parties filed cross-motions for summary judgment. The trial court denied Cincinnati's motion and granted Sherman's, awarding it the remaining unpaid amount. Cincinnati appeals. While the record supports the trial court's denial of summary judgment to Cincinnati and its grant of summary judgment to Sherman on the issue of liability, it does not support the amount of Sherman's award. We therefore affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] We review a grant of summary judgment de novo and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

On September 1, 1997, Cincinnati issued a commercial insurance policy to Sherman that would indemnify it for, among other things, loss attributable to employee dishonesty. In their joint statement, the parties stated that the

> [p]olicy had a three (3) year term from September 1, 1997 to September 1, 2000 and the Policy was renewed for an additional three (3) year term from September 1, 2000 to Sep-

---

[1] OCGA § 9-11-56 (c).

[2] Cox v. Southern Guaranty Ins. Co., 254 Ga. App. 776 (563 SE2d 882) (2002).

tember 1, 2003. Otherwise, and for the purposes of these cross-motions, the provisions of the two policies were the same.

Sherman discovered that, during each of the policy years it was covered by insurance, it had experienced losses attributable to the dishonesty of one of its employees. In November 2000, it submitted a proof of loss to Cincinnati seeking to recover the $50,000 limit of insurance for loss that had occurred during each year of the original policy plus $10,670 for loss that had occurred during the first year of the renewal policy. The breakdown of the losses and claims was:

| SHERMAN'S FISCAL YEAR & POLICY YEAR ENDING: | LOSS | CLAIM |
|---|---|---|
| August 31, 1998 | $80,253.79 | $ 50,000 |
| August 31, 1999 | $72,909.10 | $ 50,000 |
| August 31, 2000 | $94,172.00 | $ 50,000 |
| August 31, 2001[3] | $10,670.00 | $ 10,670 |
| | Total: | $160,670 |

Cincinnati paid Sherman $50,000, claiming that $50,000 was the policy limit and that regardless of the number of years the insurance remained in force, "no limit of insurance accumulated from year-to-year or period-to-period." Sherman accepted the $50,000 with a reservation of its right to maintain that Cincinnati owed additional sums.

Sherman then sued Cincinnati, contending that Cincinnati was liable up to its limit of liability of $50,000 for each year that coverage was in effect. Cincinnati argued that its total liability was limited to $50,000, pointing to a "Non-Cumulation of Limit of Insurance" clause that provided, "Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period." Sherman argued that the noncumulation clause was ambiguous, that the clause thus must be construed against Cincinnati, and that in so doing, Sherman was entitled to recover the additional $110,670 claimed. Finding the noncumulation clause ambiguous, the trial court denied Cincinnati's motion for summary judgment and granted Sherman's motion, awarding it $110,670 plus interest.

1. Cincinnati contends that the trial court erred in granting Sherman summary judgment. It claims that the noncumulation clause is not ambiguous and that when it is considered with the defi-

---

[3] Losses occurred between September 1-October 11, 2000.

nition of "occurrence," it is clear that Cincinnati's liability to Sherman is limited to $50,000.

On appeal, this Court reviews questions of law de novo. The trial court must decide if the contract language is ambiguous; if it is, the trial court must apply the applicable rules of construction. OCGA § 13-2-2 sets forth the rules for interpreting contracts generally. The existence or nonexistence of an ambiguity is itself a question of law for the court. A word or phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one.[4]

The parties stipulated that there were two policies, the original and the renewal, each with a policy period of three years. In addition, Sherman's unamended complaint, combined with Cincinnati's answer, reveals that Cincinnati issued Sherman "a commercial insurance policy . . . for the period September 1, 1997 through September 1, 2000." And the "Common Policy Declarations" page of the renewal policy named a "Policy Period" of September 1, 2000, to September 1, 2003. Each policy provided that the "most [Cincinnati] will pay for loss in any one 'occurrence' is the applicable Limit of Insurance shown in the Declarations." The Declarations set the "Limit of Insurance" at $50,000. "Occurrence" was defined as "all loss caused by, or involving, one or more 'employees', whether the result of a single act or series of acts."

Under the circumstances of this case, we find the noncumulation clause ambiguous. Although it could be fairly understood to mean that the insurer's liability is limited to a maximum aggregate amount of $50,000, as argued by Cincinnati, it could also mean that the limit of liability in one policy period cannot be carried over and added to the limit of liability in the succeeding policy period — although for each policy period, the insured could receive up to $50,000.[5] However, we cannot agree with Sherman that the original policy can also be fairly understood to mean that Sherman could receive up to $50,000 for each of the three years the policy was in

---

[4] (Citations and punctuation omitted.) *Tachdjian v. Phillips*, 256 Ga. App. 166, 168-169 (568 SE2d 64) (2002).

[5] See generally *Cincinnati Ins. Co. v. Hopkins Sporting Goods*, 522 NW2d 837 (Iowa 1994); *A.B.S. Clothing Collection v. Home Ins. Co.*, 34 Cal. App.4th 1470 (41 Cal. Rptr.2d 166) (1995); *Landico, Inc. v. American Family Mut. Ins. Co.*, 559 NW2d 438 (Minn. App. 1997); compare *Shared-Interest Mgmt. v. CNA Financial Ins. Group*, 283 AD2d 136 (725 NYS2d 469) (N.Y. App. Div. 2001) (initial policy issued established policy period as: "From June 8, 1990 to Until Cancelled").

effect. This is because the record is contrary to a requisite finding of three separate policies during those years.[6]

When the language of an insurance contract is ambiguous and subject to more than one reasonable construction, the policy must be construed in the light most favorable to the insured.[7] Accordingly, under the provisions cited above and consistent with the parties' stipulation, Sherman would be entitled to recover the loss it incurred in each of the two policy periods up to the Limits of Insurance of $50,000 under the respective policies. Because the record contains no support for the trial court's implicit finding of four separate policies in this case, as would have been necessary for its calculation of Sherman's award, we vacate the award and remand for proceedings consistent with this opinion.

2. There is no merit in Cincinnati's argument that its liability is nonetheless limited to $50,000 because the acts of employee dishonesty constituted only one occurrence. As determined in Division 1, the record demonstrates two policies. In each, Cincinnati agreed to pay up to $50,000 for loss from any one occurrence. "Occurrence," as defined by the policies, did not affirmatively include acts occurring outside the respective policy periods. Furthermore, each policy provided that Cincinnati would pay Sherman "only for loss that [it] sustain[ed] through acts committed or events occurring during the Policy Period." It is undisputed that there was loss during the renewal policy period and during the original policy period. Moreover, Cincinnati expressly promised to pay for "covered loss discovered no later than one year from the end of the policy period." And the record reveals that Sherman discovered its loss and notified Cincinnati within the time constraints of the policies.

3. There also is no merit in Cincinnati's argument that its liability is limited to $50,000 by another provision stating that if any loss is covered "[p]artly by this insurance" and "[p]artly by any prior cancelled or terminated insurance," the most Cincinnati would pay is the larger of the amount recoverable under "this insurance or the prior insurance." Even assuming that the original policy constituted "prior cancelled or terminated insurance," there was no showing that any loss was covered partly by it and partly by the renewal policy.[8]

4. There is no merit to Cincinnati's argument that its liability is limited to $50,000 by its "Loss Sustained During Prior Insurance" provision. Under that provision, Cincinnati would pay, within the existing policy's limits, a claim for a loss that would have been cov-

---

[6] A.B.S. Clothing, supra, cited by Sherman, is inapposite in that it involved three separate and distinct one-year policies, rather than a single three-year policy.

[7] Claussen v. Aetna Cas. &c. Co., 259 Ga. 333, 334 (1) (380 SE2d 686) (1989).

[8] See generally Karen Kane, Inc. v. Reliance Ins. Co., 202 F3d 1180 (9th Cir. 2000).

ered "except that the time within which to discover loss had expired." There is no contention that the time had expired for Sherman to recover under the original policy for those acts of employee dishonesty that undisputedly occurred while the original policy was in effect.

5. It follows that the trial court's denial of Cincinnati's motion for summary judgment was proper.

*Judgment affirmed in part and reversed in part and case remanded. Andrews, P. J., and Mikell, J., concur.*

DECIDED MARCH 28, 2003 —
RECONSIDERATION DENIED APRIL 14, 2003 — ▉▉▉▉▉▉

*Howard, Clark & Mercer, Glen W. Clark, Jr.*, for appellant.
*Warlick, Tritt & Stebbins, William B. Warlick*, for appellee.
*Powell, Goldstein, Frazer & Murphy, Karen D. Wildau*, amicus curiae.