**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 13, 2024**

# In the Court of Appeals of Georgia

A23A1627. NORTH ATLANTA VASCULAR CLINIC, P.C. v. THOMAS MATTHEWS et al.

WATKINS, Judge.

North Atlanta Vascular Clinic, P.C., ("NAVC") appeals from a summary judgment order in favor of Northside Hospital, Inc. ("Northside") and Thomas Matthews, M. D. (collectively, the "Appellees"). On appeal, NAVC argues that the trial court erred in finding that Dr. Matthews was not bound by a non-compete provision in an amendment to a physician employment agreement. For the reasons set forth infra, we affirm.

> To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts warrant judgment as a matter of law. A defendant may do this by showing the court that the documents, affidavits,

depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. We review a ruling on a motion for summary judgment de novo, viewing the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant.[1]

So viewed, the record shows that, in August 2015, Dr. Matthews and EHCA Johns Creek, LLC d/b/a Emory Johns Creek Hospital ("Emory") executed a Recruiting Agreement whereby Dr. Matthews agreed to relocate his medical practice to the Johns Creek area for at least four years (the "Commitment Period"). Emory agreed to reimburse Dr. Matthews for his expenses in relocating his home, marketing, and starting up his new practice. Emory also guaranteed his salary for the first year (the "Guarantee Period").

Dr. Matthews was employed by NAVC, a private medical practice with offices in Johns Creek, Alpharetta, and Cumming. Dr. Matthews, Emory, and NAVC simultaneously executed an Addendum to the Recruiting Agreement, in which NAVC

---

[1] (Citation and punctuation omitted.) *American Control Systems, Inc. v. Boyce*, 303 Ga. App. 664, 665 (694 SE2d 141) (2010). NAVC also filed a motion for partial summary judgment, seeking a declaration that the restrictive covenant was valid and enforceable. The trial court denied this motion in the same order that it granted the Appellees' motions.

"acknowledge[d] that [Dr. Matthews] owe[d] certain obligations and responsibilities to [Emory] pursuant to the terms of the Recruiting Agreement[.]" NAVC agreed to be jointly and severally liable with Dr. Matthews for any repayments owed due to a breach of the Recruiting Agreement. Dr. Matthews and NAVC agreed that Dr. Matthews "may not enter into a non-compete agreement or other similar practice restriction" and that if he did agree to such a restriction within the Commitment Period, it would constitute a "material breach" of the Recruiting Agreement. In the event of a material breach within the Commitment Period, he would repay a portion of the sums that Emory had paid him.

Dr. Matthews and NAVC also executed a Physician Employment Agreement ("PEA"), referencing at the outset the Recruiting Agreement "pursuant to which [Emory] has agreed to assist [Dr. Matthews] in relocating his full-time practice of medicine to the community and geographic area served by [Emory] on a full-time permanent basis for at least [four years] (the 'Commitment Period')[.]" The PEA also referenced the Addendum, whereby Emory would cover Dr. Matthews's salary and other expenses for the first year. The PEA listed Dr. Matthews's start date as

September 1, 2016. Thus, his four-year Commitment Period under the Recruiting Agreement lasted until August 31, 2020.

After setting forth, inter alia, certain duties of Dr. Matthews and compensation terms, Article VII of the PEA, "Termination," provided that after the first year, Dr. Matthews could terminate the PEA "without cause upon not less than ninety (90) days prior written notice[.]" In such event, neither Dr. Matthews nor NAVC "shall have any further obligations to the other Party under this Agreement after the effective date of termination." However, a "Survival" clause contained in the "General Provisions" article provided that "[n]otwithstanding the termination" of the PEA, the provisions of Artcle IX (Restrictive Covenants) "shall" survive such termination.

Article IX of the PEA prohibits Dr. Matthews from soliciting patients, soliciting or interfering with business relations, and recruiting personnel during the term of the PEA and for a period of two years after its termination. Article IX does not contain a non-compete provision or similar restriction.

In November 2018, Dr. Matthews and NAVC executed an Amendment to Physician Employment Agreement (the "Amendment") "to include additional provisions and clarify [Dr. Matthews's and NAVC's] agreement on the terms of [Dr.

4

Matthews's] productivity bonus payment and potential hospital emergency call coverage compensation." Section 1 of the Amendment provided that "[e]ffective as of September 1, 2020," Article IX of the PEA would be deleted in its entirety and replaced with new text, which included a non-compete provision. Under the revised Section 9.6, Dr. Matthews agreed not to "provide [vascular] services" at any other facility within seven miles from NAVC (without its prior written consent) for a period of two years after termination of the PEA.

In March 2020, Dr. Matthews notified NAVC of his "intent to terminate [his] Employment Agreement with [NAVC]" effective August 31, 2020. On September 1, 2020, Dr. Matthews started working for Northside in its vascular surgery practice.

NAVC sued Dr. Matthews, seeking a declaration that Dr. Matthews was subject to the revised Article IX of the PEA (specifically the new non-compete provision). After Northside intervened, seeking its own declaratory judgment against NAVC, NAVC amended its complaint and added claims for injunctive relief, breach of contract, and attorney fees.

The trial court granted summary judgment against NAVC, finding that, under the clear and unambiguous language of the Amendment, the non-compete provision

would only be inserted into the PEA on September 1, 2020. "Because the [PEA] was successfully terminated as of August 31, 2020, its language could not be amended on September 1, 2020, to add new obligations, including the non-competition provision." This appeal followed.

OCGA § 13-2-3 provides that "[t]he cardinal rule of [contract] construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction."[2] With these guiding principles in mind, we turn now to NAVC's claims of error.

1. NAVC argues that Dr. Matthews was bound by the non-compete provision contained in the revised Article IX because Article IX survived termination of the PEA

---

[2] Accord *Thornton v. Kumar*, 240 Ga. App. 897, 898 (525 SE2d 735) (1999) ("The construction of contracts involves three steps. First, if no ambiguity appears, the trial court enforces the contract according to its terms, irrespective of all technical or arbitrary rules of construction. That is, where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Secondly, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.") (citations omitted).

and thus, on September 1, 2020, Dr. Matthews became bound by the revised Article IX. We disagree.

It is undisputed that the PEA terminated on August 31, 2020, after Dr. Matthews gave the required written notice. Thus, the only obligations Dr. Matthews had after August 31 were those that were "expressly set forth" in the PEA as it existed on August 31, 2020, specifically those in Article IX as the PEA provided that its provisions "shall survive" such termination. Because the Amendment clearly provided that the revised Article IX would not become effective *until* September 1, 2020, and the PEA was terminated on August 31, 2020, the only version of Article IX that could have survived the termination was the original one. In other words, under the clear and unambiguous terms of the PEA and the Amendment, the parties' agreement terminated on August 31, and the Article IX that was in place on that date survived the termination. Reading the PEA and the Amendment as a whole,[3] Dr. Matthews was not bound by the non-compete clause.

---

[3] See *Thornton*, 240 Ga. App. at 898-899 ("The law favors a construction that will uphold the contract as a whole, and the whole contract should be looked to in arriving at the construction of any part.").

2. In a related argument, NAVC contends that the trial court erred in reading the survival provision out of the contract, which conflicts with the mandatory use of "shall" in the PEA.

As discussed in Division 1, supra, the original Article IX of the PEA survived the termination of Dr. Matthews' employment, which was effective August 31, 2020. The Amendment provided that "[e]ffective *as of September 1, 2020*, Article IX . . . shall be deleted in its entirety and replaced with the [new restrictive covenants]."[4] Because the PEA had already been terminated before September 1, 2020, the revised Article IX never became part of it. Read together as a whole, because the agreement was terminated on August 31, only the version of Article IX that was then in effect survived the termination. "[N]o ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation."[5]

3. As part of its contention that the new version of Article IX survived termination, NAVC points to the "up-front consideration" it provided in the

---

[4] (Emphasis supplied.)

[5] (Citation and punctuation omitted.) *Anderson v. David*, 367 Ga. App. 883, 888 (889 SE2d 114) (2023).

Amendment, arguing that it gave Dr. Matthews additional, retroactive bonuses in exchange for his agreement to be bound by the non-compete provision. We disagree with this characterization.

The plain language of the Amendment belies NAVC's argument that the trial court's interpretation would cause the Amendment to fail for lack of consideration. The Amendment provided that NAVC and Dr. Matthews "desire[d] to amend the terms of the [PEA] to include additional provisions and *clarify* the Parties' agreement on the terms of Dr. Matthews's productivity bonus payment and potential hospital emergency call coverage compensation."[6]

"Where the terms of a written contract are clear and unambiguous the court will look to the contract alone to find the intention of the parties."[7] Within the four corners of the written contract, there is no mention that NAVC was providing

---

[6] (Emphasis supplied.)

[7] (Citation and punctuation omitted.) *Blockum v. Fieldale Farms Corp.*, 275 Ga. 798, 800 (2) (573 SE2d 36) (2002).

9

additional compensation in exchange for the execution of the non-compete provision.[8] Accordingly, this claim of error fails.

4. Based on our holding that, under its clear and unambiguous terms, the PEA was terminated on August 31, 2020, and the revised version of Article IX never came into effect, we need not address NAVC's argument that the non-compete provision was valid and enforceable. We also need not address the Appellees's argument that any ambiguity in the contract language must be construed against NAVC, who drafted the PEA and Amendment.[9]

*Judgment affirmed. Barnes, P. J., and Land, J., concur.*

---

[8] See *Reed v. Crown Ctr. Mgmt. Co.*, 173 Ga. App. 520, 521 (326 SE2d 825) (1985) (parol evidence not admissible to vary the terms of clear and unambiguous agreements).

[9] See *SPI Holdco, LLC v. Mookerji*, 361 Ga. App. 449, 458 (1) n. 29 (864 SE2d 633) (2021).